UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| Jem Accessories, Inc., d/b/a Xtreme Cables, | Civil Action No.: |
| Plaintiff, | **VERIFIED COMPLAINT** |
| v. | |
| Sentry Industries, Inc., | |
| Defendant. | |

## PARTIES AND JURISDICTION

1. Plaintiff Jem Accessories, Inc., d/b/a/ Xtreme Cables ("plaintiff"), is a New Jersey corporation with a principal place of business of 32 Brunswick Avenue, Edison, New Jersey 08817.

2. Defendant Sentry Industries, Inc. ("defendant") is a corporation with a principal place of business of 1 Bridge Street, Hillburn, New York 10931.

3. This action arises under the laws of the United States, the Lanham Act, 15 U.S.C. Sections 1051 et. seq., as well as the laws of the State of New Jersey.

4. Jurisdiction of this Court is based upon 28 U.S.C. Sections 1331 and 1338, as well as 28 U.S.C. Section 1332.

5. This Court has jurisdiction over the claims arising under the laws of the State of New Jersey by virtue of 28 U.S.C. 1338(b) and pursuant to the principles of pendent jurisdiction.

## STATEMENT OF FACTS

6. Plaintiff has been manufacturing and distributing various home theater cables and accessories including headphones and earbuds, speakers and bluetooth products.

7. Plaintiff is a leading global supplier to some of the world's largest distributors and electronic chains.

8. Plaintiff has formed a brand by use of the word "Xtreme" which is labeled on its products.

9. The Xtreme family of products are marketed and sold using inherently distinctive trade dress, which has also obtained secondary meaning in the marketplace.

10. Such trade dress is nonfunctional with respect to the product.

11. The Xtreme brand is believed to be used exclusively by plaintiff.

12. Plaintiff has expended significant resources, hours and money to develop, market and promote its Xtreme products.

13. Through its efforts, plaintiff's Xtreme products have garnered extensive and positive coverage and attention.

14. Plaintiff adopted the Xtreme brand as early as January 2004. Since that time, plaintiff has continuously used the Xtreme brand in connection with the following goods marketed for sale: brackets specially adapted for setting up flat screen TV sets; carrying cases for mobile computers; cell phone battery chargers; cell phone cases; cell phone covers; computer mouse; computer stylus; protective cases for smartphones; and USB cables for cellphones.

15. In order to protect the goodwill of its Xtreme brand, on November 6, 2013, plaintiff applied for a Trademark/Service Mark for the above items.

16. In 2006, plaintiff registered the domain name "xtremecables.net" and has been using the website continuously since that time for sale and marketing of its products.

17. As early as January 2008, plaintiff has sold the following products under the Xtreme brand name with an X shaped symbol located next to the word Xtreme: earphones and

headphones; batteries; battery chargers; battery chargers for use with telephones; brackets specially adapted for setting up flat screen TV sets; carrying cases for cell phones; carrying cases for mobile computers; cell phone battery chargers; cell phone cases; and computer stylus.

18. Plaintiff's mark: 

19. On December 27, 2013, plaintiff applied for a Trademark/Service Mark for the above items.

20. During all of the above time, plaintiff has spent considerable time, effort and money in advertising and promoting its Xtreme brand products. As such, plaintiff's Xtreme brand has acquired a favorable reputation among members of the purchasing public and have become valuable symbols of goodwill.

21. Defendant originally began selling film and photo accessories. It eventually began selling tape players and accessories and then branched out into selling calculators mostly for school children.

22. Defendant has recently begun selling earphones, headphones, and ear buds with the logo "Xtraem."



23. By defendant's own admission it did not begin marketing earphones, headphones, and ear buds with the logo Xtraem until April 12, 2010.

24. Defendant has thus began selling its Xtraem marked products over six years after plaintiff first started marketing its Xtreme brand of products, and over two years since plaintiff first began marketing its Xtreme earphones and headphones.

25. Defendant is a direct competitor of plaintiff.

26. By using the Xtraem logo defendant has intentionally sought to confuse plaintiff's actual and potential customers and capitalize on the extensive goodwill and brand loyalty plaintiff has created and established.

4

27. Plaintiff has placed defendant on notice that defendant's actions constitute a violation of federal and state false advertising laws, as well as various federal and state unfair competition laws.

28. Such deceptive and misleading advertising greatly and irreparably injures plaintiff.

29. Defendant's acts are willful, and plaintiff has no adequate remedy at law for defendant's acts; plaintiff's injuries are irreparable; and plaintiff is and will continue to be damaged unless defendant is enjoined by this Court.

### COUNT ONE – FEDERAL TRADEMARK INFRINGEMENT

30. Plaintiff incorporates the above allegations as if set forth at length herein.

31. Plaintiff has been selling products containing the Xtreme brand name since January 2004.

32. Similarly, plaintiff has been selling products containing the Xtreme brand name along with an X shaped symbol located next to the word Xtreme since January 2008.

33. Plaintiff applied for trademark protect for both the Xtreme brand name and the Xtreme brand name with X shaped symbol ("plaintiff's marks" or "the marks").

34. Plaintiff's marks have been in use and available in the stream of commerce for numerous years and serve as notice to the defendant of plaintiff's ownership of the marks.

35. Defendant's use of the logo Xtraem is confusingly similar to plaintiff's marks and creates a likelihood of confusion, mistake or deception as to the source of defendant's goods or services. Defendant is thereby infringing plaintiff's marks.

36. Defendant's infringing activities have caused and threaten to cause great and irreparable harm to plaintiff by diverting revenue from plaintiff.

37. Defendant's infringing activities have caused and are likely to cause continued great and irreparable harm to plaintiff through confusion in the market and in the minds of plaintiff's customers and potential customers.

38. As a result of defendant's violation of the Lanham Act, plaintiff has suffered irreparable injury and damage.

### COUNT TWO - TRADE DRESS INFRINGEMENT

39. Plaintiff incorporates the above allegations as if set forth at length herein.

40. Plaintiff has established inherently unique, non-functional trade dress for its products, which trade dress has obtained secondary meaning in the marketplace.

41. Through plaintiff's use, marketing and sales of its Xtreme products, the Xtreme brand has obtained secondary meaning in the marketplace, and has become associated in the minds of consumers with plaintiff, and the trade dress features have become a source identifier for plaintiff's products.

42. Defendant's logo so closely resembles the plaintiff's marks in appearance and meaning that the use thereof by defendant is likely to cause confusion, mistake and deception as to the source of origin of defendant's goods and will injure and damage plaintiff and the goodwill and reputation symbolized by plaintiff's marks.

43. The reputations of plaintiff's marks is such that the public is likely to be confused, to be deceived and to assume erroneously that defendant's logo is associated with or otherwise connection with plaintiff, and to mistakenly believe that defendant's good are those of plaintiff or the parties are in some way connected or affiliate, all to plaintiff's irreparable damage and injury.

44. As set forth above, defendant has unlawfully and unjustly infringed upon the inherently distinctive trade dress of plaintiff's Xtreme products to the harm and detriment of plaintiff.

45. Plaintiff has expended money, time, and effort in product development, advertising and marketing to establish good will with consumers regarding its Xtreme products.

46. These expenditures have caused the trade dress for these products to obtain secondary meaning in the marketplace.

47. Defendant has been unjustly enriched through the marketing and sale of its Xtraem products.

48. As a result of defendant's actions, plaintiff has been and will continue to be damaged.

49. Defendant's actions are knowing and willful.

50. As a result of defendant's actions, there is a likelihood of confusion as between plaintiff's Xtreme products and defendant's Xtraem products.

51. Plaintiff has been and will continue to be damaged by defendant's illegal and infringing conduct.

## COUNT THREE - TRADE DRESS DILUTION

52. Plaintiff incorporates the above allegations as if set forth at length herein.

53. Plaintiff has established inherently unique, non-functional trade dress for its products, which trade dress has obtained secondary meaning in the marketplace.

54. Through plaintiff's use, marketing and sales of its Xtreme products, the Xtreme brand has obtained secondary meaning in the marketplace, and has become associated in the

minds of consumers with plaintiff, and the trade dress features have become a source identifier for plaintiff's products.

54. As set forth above, defendant has unlawfully and unjustly infringed upon the inherently distinctive trade dress of plaintiff's Xtreme products to the harm and detriment of plaintiff.

56. Defendant's use of Xtraem is essentially identical to plaintiff's marks as it contains no distinctive matter other than the slightly altered spelling.

57. Defendant's use of Xtraem will cause dilution by blurring and dilution by tarnishment of plaintiff's marks, thereby impairing the distinctive quality of plaintiff's marks.

58. Defendant's use of Xtraem will promote an association in the minds of the public between Xtraem and plaintiff's marks, and between plaintiff and defendant arising from the similarity between defendant's logo and plaintiff's marks, thereby impairing the distinctiveness of plaintiff's marks by lessening the capacity of plaintiff's marks to identify and distinguish plaintiff's products.

59. Upon information and belief, defendant intended to create an association between its logo and plaintiff's marks because of plaintiff's good reputation in the field.

60. Defendant's actions are knowing and willful.

61. As a result of defendant's actions, plaintiff's trade dress is likely to be diluted through blurring, as consumers are likely to link the plaintiff's product with defendant's product, thereby causing plaintiff's Xtreme products to lose the ability to serve as a unique identifier of plaintiff's products.

62. Use of defendant's logo is likely to harm the reputation of plaintiff's marks because prospective customers who encounter defects in the quality of defendant's good will attribute those defects to plaintiff, thereby tarnishing and harming plaintiff's goodwill.

63. Plaintiff has been and will continue to be damaged by defendant's illegal and infringing conduct.

### COUNT FOUR – LIKELIHOOD OF CONFUSION

64. Plaintiff incorporates the above allegations as if set forth at length herein.

65. Defendant's logo so closely resembles plaintiff's marks in sound, appearance and meaning that the use thereof by defendant is likely to cause confusion, mistake and deception as to the source or origin of defendant's products and will injure and damage plaintiff and the goodwill and reputation symbolized by plaintiff's marks.

66. The fame and renown of plaintiff's marks is such that the public is likely to be confused, to be deceived and to assume erroneously that defendant's logo is associated or connected with plaintiff's, and to mistakenly believe that defendant's products are those of plaintiff or that they are in some way connected with plaintiff, all to plaintiff's irreparable damage and injury.

67. Likelihood of confusion and deception is enhance by the fact that plaintiff's products under plaintiff's marks are provided or intended to be provided to consumers who may be customers of defendant's products.

68. Use of defendant's logo in light of plaintiff's rights in its marks is likely to cause confusion, mistake and/or deception among members of the relevant purchasing public resulting in damage and injury to plaintiff in violation of 15 U.S.C. Section 1052(d).

## COUNT FIVE – FALSE SUGGESTION OF A CONNECTION

69. Plaintiff incorporates the above allegations as if set forth at length herein.

70. Defendant's logo is the same as, or a close approximation of, plaintiff's marks, which are symbols of plaintiff's identity and goodwill.

71. Defendant's logo will be recognized by customers as a symbol of plaintiff's identity and goodwill.

72. Plaintiff is not connected with defendant, defendant's products or any activities performed by the defendant.

73. The fame and reputation of plaintiff is such that, when defendant's logo is used with defendant's products, the public would presume, falsely, that there is a connection between defendant and plaintiff.

74. Defendant's logo falsely suggests a connection with plaintiff in violation of 15 U.S.C. Section 1052(a).

## COUNT SIX - NEW JERSEY CONSUMER FRAUD ACT

75. Plaintiff incorporates the above allegations as if set forth at length herein.

76. As demonstrated above, defendant has misled consumers through its deceptive advertising practices in violation of N.J.S.A. 56:8-2, the New Jersey Consumer Fraud Act.

77. As a result of the defendant's violation of the New Jersey Consumer Fraud Act, plaintiff has suffered irreparable injury and damages including, but not limited to, lost business and damage to plaintiff's reputation and good will.

## COUNT SEVEN - UNFAIR COMPETITION

78. Plaintiff incorporates the above allegations as if set forth at length herein.

79. As demonstrated above, defendant has engaged in deceptive advertising practices.

80. Such actions violate the common law tort of unfair competition, which has been codified in New Jersey under N.J.S.A. 56:6-4 and under federal law, 15 U.S.C. Section 1125.

## PRAYER FOR RELIEF

WHEREFORE, plaintiff demands judgment against defendant as follows:

1. That defendant, its officers, agents, sales representatives, servants, employees, associates, attorneys, successors and assigns, and any and all persons or entities acting by, through, under, or in active concert or in participation with any or all of them be enjoined from doing, abiding, causing, or abetting the following:

    a. Using for sale or offering for sale, promotion, advertising, marketing and/or distribution of its products with the Xtraem logo; and

    b. Otherwise competing unfairly with plaintiff in any manner whatsoever.

2. That defendant is required to pay to plaintiff as damages all profits realized by defendant from its unlawful acts.

3. That defendant be directed to pay to plaintiff all damages suffered by plaintiff as a result of unfair competition, and that the damages arising under the Lanham Act be trebled.

4. That plaintiff be awarded punitive damages.

5. That plaintiff be awarded its reasonable attorneys' fees and costs.

6. That plaintiff have such other and further relief as this Court deems just and proper.

SHERMAN, SILVERSTEIN, KOHL, ROSE
& PODOLSKY, P.A.

By: _____
Alan C. Milstein, Esquire
Jeffrey P. Resnick, Esquire
308 Harper Drive, Suite 200
East Gate Corporate Center
Moorestown, New Jersey 08057
Telephone: (856) 662-0700
Facsimile: (856) 488-4744
Attorneys for Plaintiff

Date: 11-26-14